IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SALMA RAMEEZ SHAIK, AKHIL POTHURAJU, NITHISH BABU CHALLA, SHYAM VARDHAN REDDY YARKAREDDY, and ALMAS ABDUL, | Case No.  25-cv-01584 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; PETER BERG, in his official capacity as Field Office Director of Minneapolis–St. Paul, Minnesota Immigration and Customs Enforcement, | |
| Defendants. | |

## INTRODUCTION

1.      Plaintiffs are noncitizen graduates of Concordia University in St. Paul, Minnesota. After earning master's degrees in specialized technical fields, Plaintiffs began their Optional Practical Training ("OPT")—a period of post-graduation technical training that allows students to work or intern at jobs directly relevant to their degree for a specified period of time. For some of the Plaintiffs, this period was 12 months; for others, it was 36 months. The regulations are clear: during this training period, Plaintiffs continue to have a valid F-1 student status. And Plaintiffs, consistent with the goal of the OPT program and their F-1 status, became Minnesota community members and contributed their valuable skills to American companies.

2.      Without warning, Plaintiffs have learned—not from the federal government, but through their school—that Defendants terminated their F-1 student status in the Student and

Exchange Visitor Information System ("SEVIS"). Suddenly, according to SEVIS, Plaintiffs are without lawful status to remain in the United States. Neither they nor their school were given advance notice or a meaningful explanation for the termination. Concordia University instructed them to stop working immediately and to consider leaving the country.

3.    Plaintiffs file this complaint to challenge this arbitrary and lawless termination of their F-1 student status.

4.    Plaintiffs were provided no notice, much less an opportunity to object, to the termination of their status—the foundations of the procedural due process that all persons in the United States (including noncitizens) are entitled under the Fifth Amendment.

5.    Moreover, regulations specify three limited circumstances in which Defendants can unilaterally terminate status: if (1) a specific waiver is revoked, (2) a private bill is introduced in Congress, or (3) notice is given in the Federal Register. None of these scenarios is present here. Defendants' decision to terminate Plaintiffs' status in violation of the binding regulations is therefore unlawful under the Administrative Procedure Act.

6.    In the aftermath of Defendants' lawless decisions, Plaintiffs have been cast into untenable uncertainty, living at risk of detention and removal, accruing unlawful presence that could hamper their futures in this country, and being prohibited from continuing their training to support themselves and to secure their futures. Emergency relief is necessary to stave off these urgent harms—as courts throughout the country (including in this district) have recognized when faced with identical scenarios in recent days. The Court should enter a temporary restraining order to preserve the lawful status quo and a preliminary injunction to follow.

## JURISDICTION AND VENUE

7.    Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346

(federal defendant), and 5 U.S.C. § 702 (right of review).

8.      Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e), as at least one Plaintiff and at least one federal officer Defendant reside in the District of Minnesota.

9.      This Court is authorized to grant the requested relief under 5 U.S.C. § 706, 28 U.S.C. §§ 2201–2202, 28 U.S.C. § 1651, and the Court's equitable powers.

## PARTIES

10.      **Plaintiff Salma Rameez Shaik** is a 27-year-old graduate of Concordia University, with a master's degree in information technology and management. She is a native and citizen of India. Following her graduation, Ms. Shaik was on a period of OPT valid through January 31, 2027, and was completing her training at AkamaiTek, where she was a project manager. She was notified by Concordia University on April 8, 2025 that her student status was terminated in SEVIS, forcing her to stop her work for AkamaiTek. Ms. Shaik has committed one careless-driving misdemeanor for which she served two days of community services. Ms. Shaik has complied with the rules and regulations of the F-1 student status and does not know why her status was terminated.

11.      **Plaintiff Akhil Pothuraju** is a 26-year-old graduate of Concordia University with a master's degree in information technology and management. He is a native and citizen of India. Following his graduation, Mr. Pothuraju was on a period of OPT valid through February 3, 2026, and was completing his training at Agile Technologies, where he was an intern working as a system administrator. He was notified by Concordia University on April 3, 2025 that his student status was terminated in SEVIS, forcing him to stop his work for Agile Technologies. Mr. Pothuraju has not been charged with any criminal infractions, nor has he been charged with any civil infraction, motor vehicle code violation, or immigration law violation. Mr. Pothuraju has complied with the rules and regulations of the F-1 student status and does not know why his status was terminated.

12.     **Plaintiff Nithish Babu Challa** is a 24-year-old graduate of Concordia University with a master's degree in information technology and management. He is a native and citizen of India. Following his graduation, Mr. Challa was on a period of OPT valid through February 4, 2026, and was completing his training at Sanav Technologies LLC, where he was a software engineer intern. He was notified by Concordia University on April 3, 2025 that his student status was terminated in SEVIS, forcing him to stop his work for Sanav Technologies LLC. Mr. Challa committed one misdemeanor for driving without a license and insurance for which he served two days of community services. Mr. Challa has complied with the rules and regulations of the F-1 student status and does not know why his status was terminated.

13.     **Plaintiff Shyam Vardhan Reddy Yarkareddy** is a 26-year-old graduate of Concordia University with a master's degree in information technology and management. He is a native and citizen of India. Following his graduation, Mr. Yarkareddy was on a period of OPT valid through February 1, 2027, and was completing his training at PioneerTech LLC, where he was developing web applications through Java. He was notified by Concordia University on April 9, 2025 that his student status was terminated in SEVIS, forcing him to stop his work for PioneerTech LLC. In March 2024, Mr. Yarkareddy committed one misdemeanor for driving while intoxicated for which he served five days of community service. Mr. Yarkareddy has complied with the rules and regulations of the F-1 student status and does not know why his status was terminated.

14.     **Plaintiff Almas Abdul** is a 25-year-old graduate of Concordia University, with a master's degree in information technology and management. He is a native and citizen of India. Following his graduation, Mr. Abdul was on a period of OPT valid through October 14, 2025, and was completing his training at Cognitum Solutions, where he was a .net software developer. He

was notified by Concordia University on April 3, 2025 that his student status was terminated in SEVIS, forcing him to stop his work for Cognitum Solutions. Mr. Abdul has been ticketed for traffic infractions for driving without a license, driving without insurance, and speeding. Mr. Abdul has complied with the rules and regulations of the F-1 student status and does not know why his status was terminated.

15.    Defendant Kristi Noem is the Secretary of the United States Department of Homeland Security ("DHS"), an agency of the Federal Government. She is sued in her official capacity.

16.    Defendant Todd Lyons is the Acting Director of United States Immigration and Customs Enforcement ("ICE"), a component of DHS. He is sued in his official capacity.

17.    Defendant Peter Berg is the Field Office Director of ICE's Minneapolis/St. Paul Field Office and would be the official in charge of any attempt to arrest or detain Plaintiffs. He is sued in his official capacity.

## FACTS

### I.    Background on F-1 Student Visas and Status

18.    Under the Immigration and Nationality Act ("INA"), noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Admitted students living abroad enter the United States on an F-1 visa issued by the U.S. Department of State, and once they enter, are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and

tracks information on students with F-1 student status.

19.    There is a difference between a F-1 student visa and F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country. See 8 C.F.R. § 214.1(c)(2) (noting that an F-1 visa grants admission for "duration of status"); *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 212 (5th Cir. 1981) ("Revocation of an entry visa does not automatically lead to deportation of the [noncitizen].").

20.    "An F–1 student who is admitted for duration of status is not required to apply for extension of stay as long as the student is maintaining status and making normal progress toward completion of their educational objective." 8 C.F.R. § 214.2(f)(7)(i). The regulation defines "duration of status" for an F-1 student as "the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i). The student is considered to be maintaining status if the student is making normal progress toward completing a course of study. *Id.*

21.    An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through SEVIS system, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. Concordia University has been formally approved to sponsor F-1 students.

22.    Each school that sponsors F-1 students has a Designated School Official ("DSO") who monitors, advises, and oversees the students attending that school.

23.    F-1 students are subject to an array of regulations, including maintaining a full

course of study. 8 C.F.R. § 214.2(f)(6). *See generally* 8 C.F.R. § 214.2(f).

24.     F-1 students are also entitled to participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See* 8 C.F.R. § 214.2(f)(10). CPT is any "alternative work/study, internship, cooperative education or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." 8 C.F.R. § 214.2(f)(10)(i). CPT usually occurs during a student's course of study (i.e., before graduation), and often encompasses paid teaching or assistantship positions for graduate students.

25.     OPT consists of temporary employment that is "directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii). OPT usually occurs at the end of the student's course of study (i.e., after graduation).  The typical "practical training" must generally be complete "within a 14-month period following the completion of study."  8 C.F.R. § 214.2(f)(10)(ii)(A)(3).

26.     A student who received a bachelor's, master's, or doctoral degree within a "science, technology, engineering, or mathematics field" can apply for a 24-month extension of the initial period ("STEM OPT"). 8 C.F.R. § 214.2(f)(10)(ii)(C). To receive the STEM OPT extension, an employer must agree to certain requirements, including that the student will work more than 20 hours a week; the employer must certify that the student will not replace a U.S. worker and that the opportunity will assist the student in reaching their training goals; and the student must create a training plan that will govern the STEM OPT opportunity, followed by periodic self-evaluations. 8 C.F.R. § 214.2(f)(7)–(10). DHS states that the purpose of the STEM OPT program is to "promote the ability of international students to gain valuable and practical STEM experience that supplements the knowledge gained through their academic studies," helping students to "be in a better position to begin careers in their fields of study" and helping U.S. colleges and universities

to "remain globally competitive in attracting international students."

27.     "During post-completion OPT, F-1 status is dependent upon employment," and a student cannot accrue more than 90 days of unemployment for regular OPT, or 150 days of unemployment for STEM OPT. 8 C.F.R. § 214.2(f)(10)(ii)(E).  The duration of status for a student with approved post-completion OPT begins on the date that the application for OPT was properly filed and ends 60 days after the OPT employment authorization expires. 8 C.F.R. § 214.2(f)(10)(ii)(D). Students on OPT are required to report any change of address or employment to the school's DSO, and students on STEM OPT are required to validate their name, address, and employer every six months. *See* 8 C.F.R. § 214.2(f)(12).

28.     Once a student has completed their course of study and any accompanying CPT or OPT, they generally have sixty days to either depart the United States or transfer to another accredited academic institution. 8 C.F.R. § 214.2(f)(5)(iv). If a student has been approved to transfer to another school (including to pursue a higher degree), they are authorized to remain in the United States for up to five months while awaiting matriculation at the transfer institution. 8 C.F.R § 214.2(f)(8)(i). If a student voluntarily withdraws from the F-1 program, "he or she has fifteen days to leave the United States." Id. If an F-1 student is a beneficiary of a H-1B petition that requests a change in status, the F-1 student's status and employment authorization is "automatically extended until April 1 of the fiscal year for which such H-1B status is being requested," if the petition is timely and nonfrivolous. 8 C.F.R. § 214.2(f)(5)(vi). If a student "fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," *id.*, they must leave the country immediately or seek reinstatement of their status.

## II.    Background on Termination of F-1 Student Status

29.     Termination of F-1 student status in SEVIS is governed by SEVP regulations. The

regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." *See* 8 C.F.R. § 214.2(f).

30.    Students fail to maintain their F-1 student status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study without prior approval, engaging in unauthorized employment, or other violations of the requirements under 8 C.F.R. § 214.2(f). *See Hillary K. v. DHS-ICE*, No. 19-CV-2965 (PJS/KMM), 2020 WL 1922570, at *1 (D. Minn. Apr. 21, 2020) ("[T]he status of an F-1 student ends when the student is no longer pursuing a 'full course of study.'" (citing 8 C.F.R. § 214.2(f)(5)). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." DSOs at schools must report to SEVP, via SEVIS, when a student fails to maintain status. See 8 C.F.R. § 214.3(g)(2).

31.    On the other hand, DHS's ability to initiate the termination of F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *See* 8 C.F.R. § 214.1(d).

32.    Accordingly, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and otherwise cannot serve as a basis for agency- initiated termination of F-1

student status in SEVIS. Of course, if an F-1 visa is revoked *before* the student's admission into the United States, the student may not enter, and their F-1 student status in SEVIS would be cancelled. However, the F-1 student status in SEVIS may not be terminated simply because of visa revocation *after* a student has been admitted into the United States. In DHS's own words, "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), attached hereto as **Exhibit A**.

33.     Rather, if an F-1 visa is revoked after admission, the student is permitted to pursue their course of study uninterrupted. Once that student completes their study and departs from the United States, the SEVIS record would then be terminated, and the student would need to obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION (Sept. 12, 2016), attached hereto as **Exhibit B**.

34.     While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability (and the revocation of the visa) can expressly be contested in such proceedings. See 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The immigration judge may also dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates to F-1 student status. *See* 8 C.F.R. § 1003.18(d)(ii). Only when a final removal order is entered would the status be lost.

35.     On the other hand, the Immigration Judge has no ability to review the termination of F-1 student status in SEVIS because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183; *Wellington v. INS*, 710 F.2d 1357, 1360 n.2 (8th Cir. 1983).

36.     Students who have failed to maintain F-1 status may seek reinstatement. Under regulations,

a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances;' 2) does 'not have a record of repeated or willful violations of Service regulations;' 3) is pursuing or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that the violation of status resulted from circumstances beyond the student's control, or that the violation relates to a reduction in the student's course load that would have otherwise been permitted if authorized by the school and that failure to approve reinstatement would result in extreme hardship to the student.

*Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

### III.    Termination of Plaintiffs' F-1 Student Statuses

37.     Plaintiff Salma Rameez Shaik is a 27-year-old graduate of Concordia University from which she received a master's degree in information technology and management in December 2023. She is a native and citizen of India. Ms. Shaik entered the United States through an F-1 visa on or around August 31, 2022. At her entry on the F-1 visa, Ms. Shaik was admitted into the United States for "D/S," or duration of status. Following her graduation, Ms. Shaik was authorized for an initial period of OPT and subsequently received the STEM OPT extension starting on or around February 1, 2025, which authorized her to remain in the United States and work through on or around January 31, 2027. On her initial OPT, Ms. Shaik first worked as an intern at Alpine Techq, where she was a project manager for two months. Around May 2024, she began working at AkamaiTek, where she was a "scrum master" and project manager for a company that contracts to provide IT services.

38.     By email dated April 8, 2025, Concordia University informed Ms. Shaik that her F-1 student status in SEVIS had been terminated. The email she received stated:

Since there have been student visa revocations around the country recently that

have resulted in public arrests, I am checking SEVIS records on a regular basis. I am so very sorry to inform you that your SEVIS record has been marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. The termination reason reads, "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Please note that your OPT or STEM OPT employment authorization ends when you fall out of valid status, so please stop working immediately.

The email encouraged Ms. Shaik to consult with an immigration attorney immediately and notified her that she was potentially subject to arrest and detention by federal authorities, urging her to consider leaving the United States.

39.     As a result of the email, Ms. Shaik is not currently working for AkamaiTek.

40.     On or around January 8, 2025, Ms. Shaik pleaded guilty to a careless driving misdemeanor for which she received a thirty-day suspended sentence and two days of community service. Besides the charges for the incident for which she pleaded guilty, Ms. Shaik has not been charged with other criminal infractions, nor has she been charged with any civil infraction, motor vehicle code violation, or immigration law violation. She has not been active in on-campus protests regarding any political issue.

41.     Ms. Shaik has not received notice that any F-1 visa attributed to her has been revoked.

42.     She has complied with all rules and regulations as someone with F-1 student status. She does not know why her F-1 student status in SEVIS was terminated.

43.     Ms. Shaik is the beneficiary of a H-1B petition filed by AkamaiTek, which was approved on or around August 28, 2024; she must leave the country for final consular processing and is concerned that the termination of her status will affect whether her H-1B visa is ultimately issued.

44.     Plaintiff **Akhil Pothuraju** is a 26-year-old graduate of Concordia University from

which he received a master's degree in information technology and management in December 2024. He is a native and citizen of India. Mr. Pothuraju entered the United States through an F-1 visa on or around August 24, 2023. At his entry on the F-1 visa, Mr. Pothuraju was admitted into the United States for "D/S," or duration of status.

45.     Following his graduation, Mr. Pothuraju was authorized for an initial period of OPT beginning on February 4, 2025, through February 3, 2026. On or around March 18, 2025, Mr. Pothuraju began work at Agile Technologies Inc., an information technology contractor, where he worked as an intern to help other companies administer their computer systems.

46.     On April 3, 2025, Concordia University informed Mr. Pothuraju that his F-1 student status in SEVIS had been terminated. The email he received stated:

> Since there have been student visa revocations around the country recently that have resulted in public arrests, I am checking SEVIS records on a regular basis. I am so very sorry to inform you that your SEVIS record has been marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. Please note that your OPT or STEM OPT employment authorization ends when you fall out of valid status, so please stop working immediately.

47.     The email stated that SEVIS stated the termination reason as "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." The email encouraged Mr. Pothuraju to consult with an immigration attorney immediately and notified him that he was potentially subject to arrest and detention by federal authorities, urging her to consider leaving the United States.

48.     As a result of the email, Mr. Pothuraju immediately stopped working at Agile Technologies.

49.     Mr. Pothuraju has not been charged with any criminal infractions, nor has he been

charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

50.    On or around April 7, 2025, Mr. Pothuraju received an email from the U.S. Consulate General in Hyderabad stating that his F-1 visa had been revoked. He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

51.    Mr. Pothuraju's company intends to file an H-1B visa petition on his behalf; his petition was selected as eligible for processing during the H-1B lottery on or around March 29, 2025, and he expects that Agile Technologies will file the petition within the next ninety days.

52.    Because of his qualifying degree and job, Mr. Pothuraju expected to be eligible for a STEM OPT extension as well.

53.    He is concerned that the termination of his status will affect his eligibility for either the STEM OPT extension or the H-1B visa.

54.    Plaintiff **Nithish Babu Challa** is a 24-year-old graduate of Concordia University from which he received a master's degree in information technology and management in December 2024. He is a native and citizen of India. Mr. Challa entered the United States through an F-1 visa on or around August 14, 2023. At his entry on the F-1 visa, Mr. Challa was admitted into the United States for "D/S," or duration of status.

55.    Following his graduation, Mr. Challa was authorized for a period of OPT through February 4, 2026. Beginning around February 2025, when his OPT period began, Mr. Challa worked for Sanav Technologies LLC, where he was working as a software engineer intern.

56.    On April 3, 2025, Concordia University informed Mr. Challa that his F-1 student status in SEVIS had been terminated. The email he received stated:

Since there have been student visa revocations around the country recently that have resulted in public arrests, I am checking SEVIS records on a regular basis. I am so very sorry to inform you that your SEVIS record has been marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. Please note that your OPT or STEM OPT employment authorization ends when you fall out of valid status, so please stop working immediately.

57.     The email encouraged Mr. Challa to consult with an immigration attorney immediately and notified him that he was potentially subject to arrest and detention by federal authorities, urging him to consider leaving the United States.

58.     As a result of the email, Mr. Challa immediately stopped working for Sanav Technologies LLC.

59.     On or around February 1, 2024, Mr. Challa pleaded guilty to a traffic misdemeanor for driving without a license and insurance for which he received a 30-day suspended sentence and two days of community service. Mr. Challa promptly paid the fine arising from this infraction and restored his license to active status. Besides charges arising from the incident for which he pleaded guilty, Mr. Challa has not been charged with other criminal infractions, nor has he been charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

60.     On or around April 8, 2025, Mr. Challa was notified by the U.S. Consulate General in Hyderabad that his F-1 visa has been revoked.

61.     He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

62.     Because of his qualifying degree and job, Mr. Challa expected to be eligible for a STEM OPT extension as well. He is concerned that the termination of his status will affect his eligibility for the STEM OPT extension.

63.     Plaintiff **Shyam Vardhan Reddy Yarkareddy** is a 26-year-old graduate of

Concordia University from which he received a master's degree in information technology and management in December 2023. He is a native and citizen of India. Mr. Yarkareddy entered the United States through an F-1 visa on or around August 2, 2022. At his entry on the F-1 visa, Mr. Yarkareddy was admitted into the United States for "D/S," or duration of status.

64.     Following his graduation, Mr. Yarkareddy was authorized for a period of OPT and subsequently received the STEM OPT extension starting on or around February 2, 2025, which authorized him to remain in the United States and work through on or around February 1, 2027. During his OPT, Mr. Yarkareddy completed an internship for Om Tek Inc., developing web applications through Java. Mr. Yarkareddy switched employers to PioneerTech LLC and began working there around the end of February 2025, also developing web applications for Java.

65.     On April 9, 2025, Concordia University informed Mr. Yarkareddy that his F-1 student status in SEVIS had been terminated. The email he received stated:

> Since there have been student visa revocations around the country recently that have resulted in public arrests, I am checking SEVIS records on a regular basis. I am so very sorry to inform you that your SEVIS record has been marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. The termination reason reads, "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Again, I'm so sorry to be the bearer of batter of bad news. Please note that your OPT or STEM OPT employment authorization ends when you fall out of valid status, so please stop working immediately. Losing visa status in this way means there is no grace period for you to remain in the U.S., and it also means that you are potentially subject to arrest and detention by federal authorities. We encourage you to consider leaving the U.S. as soon as possible.

66.     The email encouraged Mr. Yarkareddy to consult with an immigration attorney immediately.

67.     As a result of the email, Mr. Yarkareddy is not currently working for PioneerTech LLC.

68.     On or around March 20, 2024, Mr. Yarkareddy pleaded guilty to driving while intoxicated for which he received a 180-day suspended sentence, three years of probation, and served five days of community service. Mr. Yarkareddy promptly paid the fine arising from this infraction. Besides the charges from the incident for which he pleaded guilty, Mr. Yarkareddy has not been charged with other criminal infractions, nor has he been charged with any civil infraction, motor vehicle code violation, or immigration law violation. He has not been active in on-campus protests regarding any political issue.

69.     In February 2024, Mr. Yarkareddy received an email from the U.S. Embassy in New Delhi that his F-1 visa had been revoked, which did not instruct Mr. Yarkareddy to leave the United States but instead instructed Mr. Yarkareddy—consistent with State Department and DHS policy—that the visa revocation was effective upon his departure from the United States. He has not left the United States since January 2024.

70.     On or around April 14, 2025, he received another email from the U.S. Embassy in New Delhi stating that his F-1 visa had been revoked.

71.     He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

72.     Plaintiff Almas Abdul is a 25-year-old graduate of Concordia University from which he received a master's degree in information technology and management in August 2024. He is a native and citizen of India. Mr. Abdul entered the United States through an F-1 visa on or around April 23, 2023. At his entry on the F-1 visa, Mr. Abdul was admitted into the United States for "D/S," or duration of status. Following his graduation, Mr. Abdul was authorized for a period of OPT through October 14, 2025. Starting around January 10, 2025, Mr. Abdul worked for Cognitum Solutions, an information technology company where he was a .net software developer.

73.     On April 3, 2025, Concordia University informed Mr. Abdul that his F-1 student status in SEVIS had been terminated. The email he received stated:

> Since there have been student visa revocations around the country recently that have resulted in public arrests, I am checking SEVIS records on a regular basis. I am so very sorry to inform you that your SEVIS record has been marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. Please note that your OPT or STEM OPT employment authorization ends when you fall out of valid status, so please stop working immediately.

74.     The email encouraged Mr. Abdul to consult with an immigration attorney immediately and notified him that he was potentially subject to arrest and detention by federal authorities, urging him to consider leaving the United States.

75.     As a result of the email, Mr. Abdul is not currently working for Cognitum Solutions.

76.     Mr. Abdul has been subject to around six traffic infractions for driving without a license, driving without insurance, and speeding, which were termed misdemeanors or "petty misdemeanors." Besides these motor code violations, Mr. Abdul has not been charged with other criminal infractions, nor has he been charged with any civil infraction or immigration law violation. He has not been active in on-campus protests regarding any political issue.

77.     On or around April 2, 2025, Mr. Abdul received an email by the U.S. Embassy in New Delhi stating that his F-1 visa had been revoked.

78.     Because of his qualifying degree and job, Mr. Abdul expected to be eligible for a STEM OPT extension as well. He is concerned that the termination of his status will affect his eligibility for the STEM OPT extension.

79.     He has complied with all rules and regulations as someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

80.     These terminations have put Plaintiffs' education, research, and career trajectory at

risk. Each of the Plaintiffs had to stop their employment at their respective employers—three of them in their initial OPT period and two of them during their STEM OPT period, with nearly two years left in their employment authorization. Plaintiffs—after receiving extensions approved by the immigration authorities precisely to pursue valuable training—are losing valuable training time in jobs directly relevant to their degree and cannot recoup this experience without the Court's intervention.

81.    In addition, Plaintiffs' status terminations also put each at serious risk of immediate arrest and detention for removal proceedings—an outcome other students have already faced.[1]

82.    The unlawful terminations of Plaintiffs' F-1 status are part of a clear policy and pattern/practice, whether written or not, perpetuated by Defendants to cancel the status of thousands of immigrant students nationwide. As of April 18, 2025, *Inside Higher Ed*, an industry publication, had already reported 1,556 terminations at nearly 250 different educational institutions—including seven universities in Minnesota—and indicated that this estimate was "almost certainly a fraction of the total" because "[m]any . . . colleges are reluctant to publicly confirm any student visa revocations [because they are] anxious to avoid attracting federal scrutiny and uncertain how to navigate an increasingly fraught gray zone."[2] Mass cancellations have also been documented in numerous news sources.[3]

---

[1] *See, e.g.*, *Ozturk v. Trump*, No. 25-cv-10695-DJC, __ F. Supp. 3d __, 2025 LEXIS 64831, 2025 WL 1009445 (D. Mass. Apr. 4, 2025).

[2] Laim Knox, *Student Visa Dragnet Reaches Small Colleges*, Inside Higher Ed (April 8, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa (accessed April 9, 2025).

[3] *See, e.g.*, Andy Rose & Caroll Alvarado, *More than 300 Student Visas Revoked As the Government Expands Reasons for Deportation*, CNN (April 9, 2025), https://www.cnn.com/2025/04/09/us/us-immigration-student-visas-revoked/index.html; Collin Binkley, Annie Ma & Makiya Seminera, *Federal Officials Are Quietly Terminating the Legal*

83.     The timing and uniformity of these terminations leave little question that DHS has adopted a nationwide policy, whether written or not, of mass termination of student status in SEVIS. While the exact details of the policy are not currently known, the experience of Plaintiffs and of other publicly reported cases strongly suggests that the terminations are being indiscriminately made based upon any information that a given student has had some kind of encounter with a law enforcement official, no matter how innocuous, or a prior encounter with immigration agents even if that encounter did not involve unlawful conduct.

84.     These unlawful cancellations have also been the subject of lawsuits in federal district court in the District of Minnesota, the District of New Hampshire, the Central District of California, the Western District of Pennsylvania, the District of Arizona, the Western District of Arizona and the Northern District of Georgia.[4] Two judges in this District already issued temporary restraining orders similar to the one sought here on nearly identical facts. *Ratsantiboon v. Noem*, No. 25-cv-1315 (JMB/JFD), 2025 WL 1118645 (D. Minn. Apr. 15, 2025) (Bryan, J.); *Jin v. Noem*, No. 25-cv-1391-PJS-DLM (D. Minn. Apr. 17, 2025) (Schiltz, J.), ECF No. 13 (Order); *see Liu v. Noem*, No. 25-cv-133 (D.N.H. Apr. 10, 2025), ECF No. 13 (Order); *Arizona Student Doe #2 v. Trump*, No. 25-cv-175 (D. Ariz. Apr. 15, 2025), ECF No. 7 (Order); *Isserdasani v. Noem*, No. 25-

*Residency of Some International College Students*, Associated Press (Apr. 4, 2025), https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Ava Hu, *Deported Over a Speeding Ticket? Dozens of US Students' Visas Abruptly Revoked*, The Guardian (Apr. 7, 2025), https://www.theguardian.com/us-news/2025/apr/07/trump-student-visas-deportation.

[4] *See Liu v. Noem*, No. 25-cv-133 (D.N.H. filed Apr. 7, 2025); *C.S. v. Noem*, No. 25-477 (W.D. Pa. filed Apr. 7, 2025); *Student Doe #1 v. Noem*, No. 25-cv-847 (C.D. Cal. filed Apr. 5, 2025); *Jane Doe #1 v. Bondi*, No. 25-cv-1998 (N.D. Ga. filed Apr. 11, 2025); *Ratsantiboon v. Noem*, No. 25-cv-1315 (JMB/JFD) (D. Minn. filed Apr. 14, 2025); *Jin v. Noem*, No. 25-cv-1391-PJS-DLM (D. Minn. filed Apr. 17, 2025); *Isserdasani v. Noem,* No. 25-cv-283 (W.D. Wis. filed Apr. 15, 2025); *Arizona Student Doe #2 v. Trump*, No. 25-cv-175 (D. Ariz. filed Apr. 15, 2025)

cv-283 (W.D. Wis. Apr. 15, 2025), ECF No. 7; *Jane Doe #1 v. Bondi*, No. 25-cv-1998 (N.D. Ga. Apr. 18, 2025), ECF No. 23 (Order).

## COUNT 1
### Violation of Fifth Amendment – Procedural Due Process
### (F-1 Student Status Terminations)

85.     The foregoing allegations are realleged and incorporated herein.

86.     The United States Constitution requires notice and a meaningful opportunity to be heard before being deprived of rights and interests that can be withdrawn only for cause by law. See *Zadyvdas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

87.     The law, namely 8 C.F.R. § 214.1(d), provides the specific bases upon which an immigrant student's F-1 status can be terminated by DHS.

88.     Defendants terminated each Plaintiff's F-1 student status under SEVIS without (i) notifying them of the termination decision and the reasons for it, (ii) providing them an individualized hearing before an impartial adjudicator, and (iii) failing to provide Plaintiff with adverse evidence and an opportunity to confront and respond to such evidence.

89.     Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.

## COUNT 2
### Violation of Administrative Procedure Act and *Accardi* Doctrine
### (Unlawful Terminations of Plaintiffs' F-1 Student Statuses)

90.     The foregoing allegations are realleged and incorporated herein.

91.    Defendants' termination of each Plaintiff's F-1 student status under SEVIS is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order[.]").

92.    Defendants' termination of each Plaintiff's F-1 student status under SEVIS violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the *Accardi* doctrine and federal agencies' own rules. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

93.    Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate each Plaintiff's F-1 student status in SEVIS based simply on revocation of a visa. Additionally, nothing in Plaintiffs' criminal history, academic record, or other applicable history or record provides a statutory or regulatory basis for termination or even for determining that any of Plaintiffs have failed to maintain their F-1 status.

94.    Additionally, in making its determination that each Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiffs' individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determination. As a result, Defendants arbitrarily and capriciously terminated each Plaintiff's F-1 student status under SEVIS.

95.    Moreover, Defendants terminated each Plaintiff's F-1 student status under SEVIS without affording them meaningful notice and an opportunity to be heard, contrary to Plaintiffs' constitutional right to procedural due process.

96.    Therefore, Defendants' termination of each Plaintiff's F-1 student status under

SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). It is also not in accordance with DHS's own rules.

### COUNT 3
**Violation of Administrative Procedure Act and *Accardi* Doctrine**
**(Policy and/or Pattern-and-Practice of F-1 Student Status Terminations)**

97.     The foregoing allegations are realleged and incorporated herein.

98.     Defendants have adopted a policy, or have engaged in a pattern-and-practice, of unilaterally terminating students' F-1 student status in SEVIS for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

99.     Beginning on or around April 4, 2025, Defendants unilaterally terminated the F-1 student status of multiple students nationwide en masse, including Plaintiffs.

100.    Defendants did not affirmatively notify the affected students or their schools. Instead, school DSOs learned, via SEVIS, that Defendants had terminated certain students' F-1 student statuses. In SEVIS, Defendants recorded the same boilerplate reason in all cases: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Defendants deliberately did not clarify whether the affected students had been identified in a criminal records check, whether their F-1 visa had been revoked, or both— willfully denying students notice of the grounds for the terminations.

101.    This policy and/or pattern-and-practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the *Accardi* doctrine and federal agencies' own rules. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

## COUNT 4
### Violation of Fifth Amendment – Procedural Due Process
### (Unlawful Detention)

102.    The foregoing allegations are realleged and incorporated herein.

103.    The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

104.    In light of the unlawful termination of each Plaintiff's F-1 student status under SEVIS, each Plaintiff is at risk of abrupt arrest and detention by ICE without prior notice.

105.    No Plaintiff has committed a serious crime, nor has any Plaintiff been subject to any academic discipline. Each Plaintiff has ensured that they have complied with all rules for the F-1 program and have, by all accounts, fully participated in their courses of study. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for the need to detain any Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court:

1)    Assume jurisdiction over this matter;

2)    Enter judgment in favor of Plaintiffs and against Defendants;

3)    Declare that Defendants Noem's and Lyons's termination of each Plaintiff's F-1 student status in SEVIS without affording them sufficient notice and opportunity to be heard violated each Plaintiff's Fifth Amendment procedural due process rights;

4)    Declare that Defendants Noem's and Lyons's termination of each Plaintiff's F-1 student status in SEVIS violated the Administrative Procedure Act (including under 8 C.F.R. § 214.1(d));

5)    Declare that Defendants Noem and Lyons have adopted a policy, or have engaged in a pattern or practice, of unlawfully terminating students' F-1 student statuses, and that this policy and/or pattern and practice violates the APA;

6)      Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to Defendants Noem and Lyons:

    a.    requiring them to restore each Plaintiff's valid F-1 student status in SEVIS at their respective schools or provide each Plaintiff with a reasonable period to maintain their valid F-1 status by allowing them to transfer to another DHS-approved school or to apply for OPT;

    b.    requiring them to set aside the F-1 student status termination decisions as to Plaintiffs;

    c.    prohibiting them from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew than any Plaintiff's F-1 student status should be terminated;

7)      Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to all Defendants:

    a.    prohibiting them from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action; and

    b.    prohibiting them from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status;

8)      Vacate and set aside Defendants Noem and Lyons's policy and/or pattern-and-practice of unilaterally terminating students' F-1 student status in SEVIS for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1, and accordingly, issue an injunction: (i) requiring Defendants Noem and Lyons to restore the valid F-1 status of individuals affected by this policy and/or pattern-and-practice and (ii) prohibiting Defendants Noem and Lyons from terminating the F-1 status of individuals under this policy and/or pattern-and-practice;

9)      Award Plaintiffs attorney's fees and other litigation costs pursuant to the Equal Access to Justice Act and/or any other applicable law; and

10)      Grant such further relief as the Court deems just and proper.

Dated:  April 21, 2025                    s/Kshithij Shrinath
_____

**ROBICHAUD, SCHROEPFER & CORREIA, P.A.**

Evangeline Dhawan-Maloney, Reg. No.
7500 Olson Memoral Highway, Suite 325
Golden Valley, MN  55427
evangeline@robichaudlaw.com
(612) 712-2843

**GREENE ESPEL PLLP**

Kshithij Shrinath, Reg. No. 0505164
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
kshrinath@greeneespel.com
(612) 373-0830

*Attorneys for Plaintiffs*