UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Salma Rameez Shaik, et al.,

        Plaintiffs,

   v.

Kristi Noem, in her official capacity
as Secretary of the U.S. Department
of Homeland Security, et al.,

        Defendants.

Civil No. 0:25-cv-01584-JRT-DJF

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1

## INTRODUCTION

Plaintiffs seek an overly broad injunction that both exceeds this Court's limited jurisdiction and is unnecessary to prevent any irreparable harm. The Court should deny the motion for a preliminary injunction and dissolve the TRO.

Plaintiffs seek to invade executive discretion by enjoining Defendants from "revoking Plaintiffs' visas, detaining them, or deporting them." Congress deprived the courts of jurisdiction to issue that injunction. The Secretary of State enjoys authority to revoke visas "at any time, in his discretion. . . . There shall be *no* means of judicial review" except in certain removal proceedings. 8 U.S.C. § 1201(i) (emphasis added). And the executive branch has broad authority to arrest and detain noncitizens pending removal decisions, free from judicial review. *Id.* §§ 1226(a), (e), 1252(f)(1). Plaintiffs' proposed injunction would break down the walls Congress constructed separating executive discretion from judicial oversight.

What remains is Plaintiffs' narrow request for an injunction setting aside their SEVIS record terminations and preventing Defendants from re-terminating those records—relief Defendants have already committed to providing. Given Defendants' assurances that the earlier SEVIS terminations have been undone, will not be re-done, and will not be held against Plaintiffs, there is no remaining threat of irreparable harm.

## BACKGROUND

**I.       Statutory and Regulatory Framework**

    **A.       The F-1 Nonimmigrant Student Classification**

Congress charges the executive branch with enforcing our immigration laws. *E.g.*, 8 U.S.C. §§ 1103–04. The Immigration and Nationality Act ("INA"), as amended, created various classes of immigrant and nonimmigrant foreign nationals lawfully admitted to the United States. *Id.* § 1101(a)(15). One such class of "nonimmigrant" foreign nationals includes "bona fide student[s] qualified to pursue a full course of study and who seek[] to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States . . . ." *Id.* § 1101(a)(15)(F)(i). A student lawfully present in the country under this provision is said to have "F-1 status."

Lawful F-1 status includes many requirements, some generally applicable to all nonimmigrants and some specific to the F-1 student classification. *See, e.g.*, 8 C.F.R. §§ 214.1(a)(3)(i), (ii), 214.2(f). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; provide documentary evidence of financial support; demonstrate they intend to attend the school specified on the

student's visa; and, if the student attends a public secondary school, show that they have paid the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). The foreign student must then obtain a nonimmigrant F-1 visa issued by the Department of State. 8 U.S.C. § 1201(a)(1)(B).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S"). "Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). "[A]uthorized practical training" consists of one of two types of authorized work: curricular practical training and optional practical training, or OPT. *Id.* § 214.2(f)(10). Both must be "directly related to [a student's] major area of study." *Id.* While in school, the student's status is based on that student pursuing a degree and need not be routinely renewed. *Id.* § 214.2(f)(7).

**B.     The Student and Exchange Visitor Information System (SEVIS)**

Congress directed the government to create a program for collecting information related to nonimmigrants in F-1 status in the United States. The Department of Homeland Security ("DHS") is charged with "develop[ing] and conduct[ing] a program" to collect certain information from approved institutions

of higher education in the United States with respect to noncitizens seeking F-1 student status. *See* 8 U.S.C. § 1372. "The [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, shall develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). DHS therefore created the Student Exchange and Visitor Program, or "SEVP."

To carry out its data-collection obligations, SEVP administers the Student and Exchange Visitor Information System, or "SEVIS." SEVIS is a web-based system used "to maintain information on . . . [SEVP]-certified schools, [and] F-1 and M-1 students who come to the United States to attend those schools[.]" *See* ICE, *Student and Exchange Visitor Information System*, available at: https://www.ice.gov/sevis/overview (last visited May 9, 2025). The information collected includes the following information about the noncitizen student: (a) his or her identity and current address in the United States; (b) nonimmigrant classification; (c) current academic status; (d) disciplinary action taken by the institution as the result of a criminal conviction or change in participation as a result of a criminal conviction;

5

(e) the date of entry and port of entry; (f) enrollment date at an approved institution or program; (g) the degree program, if applicable, and field of study; and (h) the date of termination of enrollment and the reason for such termination. 8 U.S.C. § 1372(c).

Congress did not give SEVP independent authority to terminate nonimmigrant status, by terminating a SEVIS record or otherwise. 8 U.S.C. § 1372. Instead, DHS regulations set out the ways in which F-1 status may be discontinued, requiring them to depart.

### C. Terminating Nonimmigrant Status

A nonimmigrant's status may end in several ways. *See, e.g.*, 8 C.F.R. § 214.1(d)–(g). For example, the government could revoke an earlier-granted discretionary waiver of grounds of inadmissibility under 8 U.S.C. § 1182(d)(3) or (4), rendering the nonimmigrant out of status. *Id.* § 214.1(d). She could lose her status by engaging in unauthorized employment. *Id.* § 214.1(e). Or by failing to provide full and true information to DHS. *Id.* § 214.1(f). Or by being convicted of a violent felony. *Id.* § 214.1(g).

But an F-1 student always has the right to challenge the allegation that she failed to maintain status *before* any legal consequences are imposed. The United States Citizenship and Immigration Services, or USCIS, follows the guidance laid out in a May 6, 2009, memo, explaining a nonimmigrant admitted for duration of

status begins to accrue unlawful presence only after the culmination of specific processes. Declaration of Michelle Young ("Young Dec.") ¶ 9–10 (citing USCIS Interoffice Memorandum on May 6, 2009, *Interoffice Memorandum Re: Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act* at 25, available at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited May 9, 2025) ("Neufeld Memo")); *see also* 8 C.F.R. § 239.3.

According to USCIS, nonimmigrant visa-holders are entitled to process, before accruing unlawful presence, either in removal proceedings or in USCIS administrative proceedings.

***Removal Proceedings.*** The government may initiate removal proceedings against an F-1 student by alleging, among other things, that her visa has been revoked or that she has failed to maintain status. 8 U.S.C. § 1227(a)(1)(B), (C)(i). In either event, the noncitizen student enjoys all the due process allowed by law to challenge the allegations in immigration court proceedings before removal. *Id.* § 1229a(a)(4); *see also id.* § 1201(i) (permitting visa-holders to challenge visa revocation in certain removal proceedings). And she may challenge her detention in habeas proceedings. *See* 28 U.S.C. § 2241(a).

7

Importantly, if the immigration court finds the F-1 student violated her status, unlawful presence begins to accrue the day after an order finding the violation. Young Dec. ¶ 10.

***USCIS Proceedings.*** Alternatively, USCIS could find a student has failed to maintain status while investigating her request for other immigration benefits. *See, e.g.*, 8 C.F.R. § 214.1(c)(4) (requiring denial of extension of status if the noncitizen petitioner "failed to maintain the previously accorded status"); *id.* § 248.1(b) (same, for change of status petition). According to USCIS, an F-1 student admitted for the duration of status found to have violated that status does not begin to accrue unlawful presence immediately upon failing to maintain that status. Young Dec. ¶ 8–11.

In such a case, unlawful presence begins to accrue the day after USCIS denies the requested benefit. Young Dec. ¶ 9; Neufeld Memo at 25. An F-1 student can also later request USCIS to reinstate her status. 8 C.F.R. § 214.2(f)(16).

In any case, a notation in SEVIS that a student has failed to maintain status does not result in accruing unlawful presence. *See* Young Dec. ¶¶ 7, 11.

## II.  Facts and Procedural History

The plaintiffs are natives and citizens of India, each of whom hold a master's degree in IT and management from Concordia University. Compl. ¶¶ 10–14. All

are present in the United States in F-1 status while completing a period of optional practical training, or "OPT." *Id.*

### A. SEVP marked Plaintiffs' SEVIS records as "terminated."

ICE began terminating SEVIS records of certain F-1 students in March 2025 based on information provided by the Department of State and in criminal databases. Declaration of Andre Watson ("Watson Dec.") ¶ 4; Young Dec. ¶ 6. That included marking each Plaintiffs' SEVIS record as "Terminated." Abdul Dec., Ex. 1 (Doc. 11-1 at 2); Challa Dec., Ex. 1 (Doc. 12-1 at 2); Pothuraju Dec., Ex. 1 (Doc. 13-1 at 2); Shaik Dec., Ex. 1 (Doc. 14-1 at 2); Yarkareddy Dec., Ex. 1 (Doc. 15-1 at 2). Concordia University's Designated School Officer ("DSO") notified the Plaintiffs of the SEVIS terminations and explained that the records stated, "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *See* Pothuraju Decl., Ex. 1 at 2; *see also* Shaik Decl., Ex. 1 at 2.

No Plaintiffs have been detained, placed in removal proceedings, or accrued any unlawful presence. *See* Compl. ¶ 6 (alleging Plaintiffs are "living *at risk* of detention and removal, accruing unlawful presence," etc.); Young Dec. ¶ 7. Four of the five Plaintiffs (all but Plaintiff Shaik) allege they received notice from consulate offices in India that their F-1 visas were revoked, *id.* ¶¶ 41, 50, 60, 69, 77,

9

but none have been charged as deportable in removal proceedings, on that basis or any other.

### B.     Plaintiffs brought this action.

Plaintiffs brought this action on April 21, 2025, seeking declaratory and injunctive relief against three DHS officials. *See generally* Compl., Doc. 1. That same day, Plaintiffs filed their *ex parte* motion for temporary restraining order and motion for preliminary injunction. Mot., Doc. 3. The Court granted the temporary restraining order on April 22, Mem. Op. & Order (Doc. 19), and extended that order by consent on May 2, Order (Doc. 20).

Plaintiffs seek a preliminary injunction setting aside the alleged termination of their F-1 status, reinstating their SEVIS records, and enjoining Defendants from further action terminating their status. Prop. Order Granting Pls.' Mot. For Prelim. Inj., ¶ 1(a)–(c) (Doc. 8). They also ask the Court to enjoin Defendants from "imposing any legal consequences" from the SEVIS record termination, "including revoking Plaintiffs' visas, detaining them, or deporting them." *Id.* ¶ 1(d).

### C.     SEVP has restored Plaintiffs' SEVIS record retroactively, ICE will not re-terminate the records, and no unlawful presence has accrued.

Defendants are complying with the TRO by reactivating Plaintiffs' SEVIS records retroactively. *See* Declaration of James Hicks (Hicks Dec.") ¶¶ 3–4. They also went further, stating ICE has no plans, under a new policy, to re-terminate Plaintiffs records for the criminal record that led to the initial terminations. *See*

10

Watson Dec. ¶ 6. And Plaintiffs have not accrued any unlawful presence. "USCIS does not equate SEVIS record termination with termination" of the student's F-1 status," nor does it negatively consider any period between the SEVIS record's termination and reactivation when adjudicating a benefit request. Young Dec. ¶¶ 7, 11.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Eighth Circuit has established a four-factor test for determining whether to grant this extraordinary relief: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties []; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

The two most important factors are likelihood of success on the merits and likelihood of irreparable harm. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Wildhawk Investments, LLC v. Brava I.P., LLC,* 27 F.4th 587, 593 (8th Cir. 2022) ("Likelihood of success on the

11

merits is the most important factor."). Failing to show either one justifies denying preliminary relief. *See Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) ("The failure of a movant to show irreparable harm is an independently sufficient basis upon which to deny a preliminary injunction." (quotation omitted)).

## ANALYSIS

Plaintiffs have not shown they are entitled to extraordinary relief. Their proposed injunction is overbroad, running afoul of multiple statutory limitations on this Court's jurisdiction. And what remains of their requested injunction seeks to prevent alleged harm that is not likely to occur. The Court should deny the motion.

**I.  The Court lacks jurisdiction to enjoin removal proceedings and visa revocations, and the request for such an injunction is unlikely to prevail.**

The proposed preliminary injunction exceeds the Court's jurisdiction by seeking to enjoin Plaintiffs' visa revocations and hypothetical removal. Plaintiffs' proposed order would enjoin Defendants from "revoking Plaintiffs' visas, detaining them, or deporting them." Proposed Order Granting Pls.' Mot. for Prelim. Inj., ¶ 1(d) (Doc. 8); *see also* Mem. Op. & Order Granting TRO, ¶ 1(d) (Doc. 19). The Court is statutorily barred from enjoining Defendants or other executive branch officials from acting within their sole and unreviewable discretion to commence or execute a removal or revoke Plaintiffs' visas, and the Court should decline to enter the overbroad injunction.

### A. Detention and Deportation

Start with Plaintiffs' requested injunction against their hypothetical detention and removal. This request is embodied in Count 4 of Plaintiffs' complaint, seeking to avoid future "[u]nlawful [d]etention." Compl. ¶¶ 102–105. Congress provided the Attorney General discretion to arrest and detain noncitizens pending a removal decision and divested the courts of jurisdiction to review her discretionary decisions. 8 U.S.C. § 1226(e); *but see Demore v. Kim*, 538 U.S. 510, 517 (2003) (recognizing judicial review of noncitizen's detention in habeas proceedings).

That divestiture applies equally to the injunction requested here. The INA precludes district courts from enjoining or restraining the operation of the government's immigration enforcement decisions. 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions" in 8 U.S.C. §§ 1221 through 1232, and the limited exception applies only "so long as 'proceedings' against the [noncitizen] have been 'initiated[.]'" *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Because no Plaintiff is an individual against whom proceedings under § 1226 have been initiated, the Court cannot enjoin the Attorney General's discretion to detain noncitizens under that section.

### B. Visa Revocations

Consider next Plaintiffs' requested injunction against visa revocations. Congress stated, "After the issuance of a visa or other documentation" to a noncitizen, "the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." 8 U.S.C. § 1201(i). It then boxed courts out of the process, stating, "There shall be no means of judicial review . . . of a revocation under this subsection," except in certain removal proceedings. *Id.*

Congress plainly deprived courts of jurisdiction to review executive branch decisions about foreign nationals' entry into and removal from the United States. Plaintiffs' only avenue for relief from a discretionary visa revocation is in hypothetical removal proceedings commenced based on the revocation. *Id.*[*] Because Plaintiffs' proposed order exceeds the statutory limits on this Court's jurisdiction, the Court should deny the motion and vacate the TRO.

### II. Plaintiffs have not shown they are likely to face irreparable harm.

Plaintiffs' fears of irreparable harm are unfounded. They first incorrectly contend they were deprived of due process. Pl.'s Br. at 25. They next urge without

---

[*] The requested injunction against the visa revocation would be doubly improper here considering neither the State Department nor any State Department official is a party to this litigation, and Plaintiffs' complaint does not seek any remedy with respect to the State Department or its discretionary visa revocations.

evidence that they "face the serious risk of immediate arrest and detention for deportation." *Id.* at 26. They then claim their SEVIS terminations will interrupt their "academic studies and career trajectory." *Id.* And they finally assert they are accruing out-of-status presence. *Id.* at 27. Based on this record, none of Plaintiffs' fears give rise to a likelihood of irreparable harm.

*First*, Plaintiffs would not be deprived of the due process that comes with terminating F-1 status in the absence of an injunction. Terminating the SEVIS record alone does not render Plaintiffs removable or amount to a finding that they have failed to maintain status. *See* Young Dec. ¶ 7. Plaintiffs would receive an opportunity to be heard before any finding that they have failed to maintain status—either in removal proceedings or while USCIS is adjudicating an immigration-benefits petition. As a result, Plaintiffs will not be deprived of due process.

*Second*, Plaintiffs have not shown they are "likely" to be arrested or detained. *See Winter*, 555 U.S. at 20. No Plaintiff stated in their declaration that they feared arrest or detention, much less showed evidence that arrest or detention is likely. *See generally* Abdul Dec. (Doc. 11); Challa Dec. (Doc. 12); Pothuraju Dec. (Doc. 13); Shaik Dec. (Doc. 14); Yarkareddy Dec. (Doc. 15). And no other evidence shows terminating these Plaintiffs' SEVIS records makes them "likely" to face arrest or detention. Instead, they cite paragraph 81 of the complaint. Pls.' Mem. In Support of Mot. at 26 (Doc. 9) (citing Compl. ¶ 81). That paragraph, in a footnote,

15

alleges just one example of a detained student. Compl. ¶ 81 n.1. One example out of an alleged "1,556 terminations at nearly 250 different educational institutions," *id.* ¶ 82, is not enough to show arrest or detention is "likely."

*Third*, any harm to Plaintiffs' "academic studies and career trajectory" has been mitigated. ICE re-activated Plaintiffs SEVIS records, is committed to not re-terminating them for the same reasons they were initially terminated, and has edited the SEVIS records to reset Plaintiffs' OPT authorizations to the end date set out before it was terminated. *See* Watson Dec. ¶¶ 5–6, 8. USCIS does not equate a terminated SEVIS record with a failure to maintain status, and it will not consider any period of SEVIS record termination when adjudicating another immigration-benefit petition. Young Dec. ¶¶ 7, 11. No risk of harm remains likely.

And *fourth*, Plaintiffs are not accruing any period of unlawful presence. As set out in the Young Declaration, unlawful presence begins accruing only after an immigration judge or USCIS finds a failure to maintain status in the context of immigration proceedings or adjudicating an immigration-benefits petition. Young Dec. ¶¶ 9–10. Plaintiffs have not shown that a SEVIS record termination is likely to result in accruing unlawful presence.

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction and dissolve the temporary restraining order.

Dated: May 19, 2025								Respectfully submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

*/s/ Lucas B. Draisey*
BY:  LUCAS B. DRAISEY
Assistant United States Attorney
Attorney ID Number 0401625
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
lucas.draisey@usdoj.gov

17