IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SALMA RAMEEZ SHAIK, AKHIL POTHURAJU, NITHISH BABU CHALLA, SHYAM VARDHAN REDDY YARKAREDDY, and ALMAS ABDUL,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; PETER BERG, in his official capacity as Field Office Director of Minneapolis–St. Paul, Minnesota Immigration and Customs Enforcement,<br><br>Defendants. | Case No. 25-cv-01584<br><br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Without warning or notice, Defendants "terminated" Plaintiffs in the Student & Exchange Visitor Information System (SEVIS). Plaintiffs lost the lawful ability to work and lived in fear of detention and deportation—steps the Government proudly took against other students. Since the Court's temporary restraining order, the breadth of Defendants' lawless initiative has come to light: the mass termination of students' status and visas, in violation of binding regulations. The Government now tries to reverse course, promising a new "policy" that obviates the need for any injunction. But the new policy is toothless, contrary to law, and does not restore the status quo. A preliminary injunction remains necessary.

# BACKGROUND

## I.    The Government Initiates Mass SEVIS Terminations

At a D.C. evidentiary hearing, Department of Homeland Security ("DHS") employee Andre Watson[1] revealed how the Government targeted Plaintiffs and thousands of international students for status termination and visa revocation under a so-called "Student Alien Criminal Initiative." *See* **Ex. G**, Hr'g Tr., *Patel v. Lyons*, No. 25-cv-1096 (D.D.C. Apr. 29, 2025):

- Beginning in mid-March 2025, DHS employees ran the names of ***all*** 1.3 million nonimmigrant students in the United States through the National Crime Information Center ("NCIC") database, which identifies persons who committed crimes, persons who were merely charged, and even persons who were ***victims*** of crimes, *see id.* at 8:23-9:11;

- Of the approximately 16,000 names that hit, DHS staff attempted to validate whether the NCIC record matched the student, *see id.* at 12:6-12;

- The 6,400 actual matches were sent in batches to the Department of State ("DOS"), *see id.* at 12:13-13:7;

- DOS then returned the batches of names to DHS (sometimes less than 24 hours after receiving the DHS batch) in two lists: students with already expired visas, and students with valid visas, which DOS revoked *en masse* at DHS's direction, *see id.*

---

[1] Watson submitted a declaration in this case. *See* Watson Decl. ¶ 1, ECF No. 26-1. Other officials have explained the "initiative" elsewhere. *See* **Ex. H**, Hr'g Tr., *Bushireddy v. Lyons*, No. 25-cv-1102 (D.D.C. May 5, 2025).

at 14:10-18, 16:5-13, 19:5-23:15 (DOS asking DHS, "How would you like us to prioritize revoking these visas?");

- DHS (sometimes within 15 minutes of receiving names from DOS) terminated the SEVIS records of **all** names it got back from DOS, *see id.* at 23:9-23.

DHS did not inform Plaintiffs of their SEVIS terminations or visa revocations. Pl. Mem. at 19. Instead, Plaintiffs received emails from their university instructing them to stop working and (for all Plaintiffs other than Shaik) emails from consulates abroad. *Id.* The consulate emails claimed Plaintiffs' visas had been revoked in "accordance with Section 221(i)" of the INA, *see* 8 U.S.C. § 1201(i)—a statutory provision that requires *DOS* (not DHS) to exercise discretion. The emails also threatened that persons remaining in the U.S. without lawful status are subject to deportation, including "to countries *other than their countries of origin*." ECF No. 11-2 (emphasis added); *accord* ECF No. 12-2; ECF No. 13-2; ECF No. 15-3. Naturally, panic ensued.

## II.    After Multiple Rebukes, the Government Attempts to Reverse Course

The Government has sought to sidestep public and judicial outrage through a series of convenient, but inaccurate, factual assertions.

### A.    The Government Falsely Claims That SEVIS Terminations Have No Real-World Consequences

The Government has tried to cast SEVIS as a back-end data tool such that terminations have no real consequences. *See* Gov. Opp. at 15 ("Terminating the SEVIS

record alone does not render Plaintiffs removable or amount to a finding that they have failed to maintain status.").[2]

In reality, students and universities rely on SEVIS to make real-world decisions. Among other things, DHS uses SEVIS to maintain information regarding schools' certification to host students and the status of nonimmigrant students and dependents.[3] DHS states that SEVIS "assure[s] proper reporting and record keeping by schools and exchange visitor programs" and "provides a mechanism for student and exchange visitor status violators to be identified so that appropriate enforcement is taken (i.e., denial of admission, denial of benefits or ***removal from the United States***)."[4] At minimum, an active SEVIS record indicates Defendants' view of Plaintiffs' status—and whether they are potentially subject to arrest.

Universities and students cannot lightly disregard a SEVIS termination for "failing to maintain status." Pl. Mem. at 9-15. "In obtaining SEVP certification, a school makes a legally binding commitment to comply with applicable federal laws, regulations, and [DHS] requirements," and is required to permit DHS to "conduct an on-site review at any

---

[2] Cheney & Gerstein, *How a Trump administration crackdown on foreign students unraveled*, Politico (Apr. 25, 2025), https://www.politico.com/news/2025/04/25/foreign-students-visas-donald-trump-00311600 ("The administration has downplayed ICE's actions, claiming they're minor bookkeeping adjustments that don't, at least immediately, impact students' immigration status.").

[3] DHS, *About SEVIS*, https://studyinthestates.dhs.gov/site/about-sevis.

[4] ICE, *Background: SEVP and SEVIS*, https://www.ice.gov/sevis (emphasis added).

time."[5] Similarly, students—especially Plaintiffs, whose work authorization depends on their student status—use SEVIS to confirm they can lawfully work. DHS states, when a SEVIS record is terminated for failing to maintain status, the student "loses all on- and/or off-campus employment authorization."[6] If a student works without authorization, that can itself support a "failure to maintain status."  8 C.F.R. § 214.1(e).

A preliminary injunction is necessary to remove the cloud over Plaintiffs' lives. Even as they diminish the harm posed by SEVIS termination, Defendants *still* will not commit that a student terminated in SEVIS is lawfully present. As one D.C. district judge asked: "You're standing here today on behalf of the United States and you're telling me that you do not know whether this plaintiff is legally in the United States? How is she supposed to know the answer to that question if you don't?"[7] This is "absurd because their own manuals and website contradict" the position they are taking in litigation. *Doe #1 v. Noem*, 2025 WL 1341711, at *6 (N.D. Ill. May 8, 2025); *see also Doe v. Trump*, 2025 WL 1467543, at *5-7 (N.D. Cal. May 22, 2025) (collecting cases).

### B.    The Government's "Policy" Misstates the Law and Is Not Binding

Defendants here claim—through a generic declaration from Watson—that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based

---

[5] DHS, *Getting Started with SEVP Certification*, https://studyinthestates.dhs.gov/schools/apply/getting-started-with-sevp-certification.

[6] DHS, *SEVIS Help Hub: Terminate a Student* (last updated May 19, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

[7] Cheney & Gerstein, *supra* n.2, https://www.politico.com/news/2025/04/25/foreign-students-visas-donald-trump-00311600.

solely on the NCIC record that led to its initial termination." Watson Decl. ¶ 6. The Government publicly stated it reversed course with a new "policy," saying it would restore students' status—but it warned students "could still very well have it terminated in the future, along with their visas."[8]

This "policy"—as filed in other litigation—is a "Broadcast Message: SEVIS Notice – Policy Regarding Termination of Records" (the "Message"). *See* **Ex. I**. But this Message does not repudiate the prior termination decisions and is not binding. *See id.* at 2 (The Message "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter."). The Message states, "SEVP can terminate records for a variety of reasons, including, but not limited to" a list of ten reasons. ***None*** of these reasons are listed in 8 C.F.R. § 214.2 as grounds for unilateral termination. For example, the Message claims that DHS can terminate a SEVIS record on the basis of a "visa revocation (effective immediately)"— despite explicit agency guidance that a visa revocation cannot be the basis for the termination of status. *See* Pl. Mem. at 23; ECF No. 1-1. Worse, Defendants do not disclaim the possibility that DHS will simply go to DOS—as it previously did—and request "immediate visa revocations."

Courts have rejected both the Watson declaration and the Message as insufficient to allay irreparable harm. *Doe*, 2025 WL 1467543, at *7 (N.D. Cal.); *Ortega Gonzalez v.*

---

[8] Montague & Aleaziz, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, N.Y. Times (Apr. 25, 2025), https://www.nytimes.com/2025/04/25/us/politics/trump-student-visa-cancellations.html.

*Noem*, 2025 WL 1355272, at *5 (D. Or. May 9, 2025); *Doe v. Noem*, 2025 WL 1399216, at *12-13 (W.D. Va. May 14, 2025).

## ARGUMENT

### I. The Court Has Jurisdiction to Enter the Requested Relief.

#### A. Plaintiffs Seek an Appropriate Injunction to Remedy Identified Harms

The Court has considerable discretion to fashion an injunction, *Miller v. Thurston*, 967 F.3d 727, 733 n.1 (8th Cir. 2020), and must be mindful of Rule 65(d)'s specificity requirement, which seeks to "prevent uncertainty and confusion on the part of those to whom the injunction is directed." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur,* 824 F.2d 665, 669 (8th Cir. 1987).

At base, Plaintiffs request that Defendants set aside their termination of Plaintiffs' status and provide notice before taking such a step again. Specifically:

1. Set aside previous termination of SEVIS records retroactive to date of termination.

2. Enjoin DHS from terminating SEVIS records again in the future for any reasons not authorized by law, including but not limited to immediate visa revocations, NCIC checks, criminal history that does not qualify under 8 C.F.R. § 214.1(g), and any other actions not specified in 8 C.F.R. § 214.2(d)-(g).

3. Enjoin DHS from taking any actions as a result of DHS's previous, set-aside SEVIS terminations, including but not limited to initiating removal

proceedings, detaining Plaintiffs, revoking Plaintiffs' visas, or referring Plaintiffs' names to any other government agency for visa revocation.

4.     Enjoin DHS from terminating Plaintiffs' SEVIS records in the future without first providing one week's notice to the Court and an opportunity to be heard by Plaintiffs.

5.     Require DHS to inform DOS that Plaintiffs' names were provided in error and to request that DOS reverse the visa revocations that were premised on set-aside termination of SEVIS records.

**B.     No Jurisdictional Bars Apply**

At the outset, Defendants do not contest the Court's jurisdiction over the core relief: reversal of status termination. *See* Gov. Opp. at 12. Instead, Defendants argue that the Court lacks jurisdiction to enjoin removal proceedings, detentions, or visa revocations. *See id.* at 12-14.

Courts have soundly rejected identical arguments. *See Doe*, 2025 WL 1467543, at *10 (N.D. Cal.); *Doe*, 2025 WL 1399216, at *14-15 (W.D. Va.); *Chen v. Noem*, 2025 WL 1163653, at *8-10 (S.D. Ind. Apr. 21, 2025) (collecting cases). The prohibition on removal proceedings, detention, and visa revocations are not free-floating but instead *flow from* the reversal of the status termination. The Court has authority to specify which collateral effects of the status termination are legally out of bounds now that terminations are reversed. *See Fornalik v. Perrman*, 223 F.3d 523, 532 (7th Cir. 2000) (removal proceedings can be enjoined where "that fact comes into the case only incidentally"); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (removal proceedings can be

enjoined based on "a purely legal question"). As to visa revocations, although Defendants cite 8 U.S.C. § 1201(i), that section references judicial review of *DOS's* discretionary visa revocations and does not confine the Court's authority to bar *DHS* from unlawfully revoking visas.

## II.    The Court Should Enter the Requested Injunction

A preliminary injunction is warranted in this case. At the outset, the Government does not even attempt to contest application of two of the four *Dataphase* factors: the balance of equities and the public interest. Its only argument against likelihood of success on the merits rests on its assertion of jurisdictional bars, *see* Gov. Opp. at 12, none of which apply here. *See supra* Section I.B.

All that remains then is Defendants' assertion that Plaintiffs have failed to show irreparable harm. Gov. Opp. at 14-16. But given the shifting policies and rapid-fire actions of the last few months, Defendants' attempts to downplay what SEVIS terminations mean and assertions of the limited risk facing Plaintiffs ring hollow. Defendants' arguments have been rejected by numerous courts in finding irreparable harm, including by Judge Jeffrey White of the Northern District of California, who recently entered a nationwide injunction on similar facts.[9] *See Doe*, 2025 WL 1467543, at *7 (N.D. Cal.) (collecting cases).

---

[9] Despite the nationwide injunction, Plaintiffs respectfully ask for the Court to enter an injunction here as well. It is well known that the Government is currently challenging the very *possibility* of a nationwide injunction. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1132004 (Mem.) (U.S. Apr. 17, 2025). Plaintiffs request certain relief *not* covered by Judge White's injunction, including compelling DHS to ask DOS to reconsider visa revocation. And an injunction covering Plaintiffs *specifically* will avoid the potential difficulty of proving they are "similarly situated," and secures necessary relief regardless of subsequent rulings regarding the nationwide injunction.

The Government argues that "any harm to Plaintiffs' 'academic studies and career trajectory' has been mitigated" based on the re-activation of their SEVIS records and ICE's new policy (the Message). *See* Gov. Opp. at 16. However, as the Government admits, this re-activation does not remove the "event history" for a given record, Hicks Decl. ¶ 3, ECF No. 26-2, meaning that notations of previous terminations based on criminal records checks remain. *See Doe #1 v. Noem*, No. 25-cv-2998, 2025 WL 1348503, at *12 (D.N.J. May 8, 2025) (agreeing "the 'single most significant harm' was one [Plaintiffs] are continuing to face: their SEVIS records still identify them as having been terminated based on identification in a criminal records check"). Plaintiffs anticipate asking for immigration benefits, such as the processing of an H1-B visa or the STEM OPT extension, in the future. *E.g.,* Shaik Decl. ¶ 15; Pothuraju Decl. ¶ 13. The impact of these notations (or any future changes to Plaintiffs' SEVIS records) cannot be overstated.

Next, ICE's new non-binding "policy" does not even purport to limit ICE's discretion to terminate SEVIS records in the future. A policy that might be changed on a whim cannot mitigate likelihood of irreparable harm. *See Doe*, 2025 WL 1467543, at *7 (N.D. Cal.).

The Government also argues that "Plaintiffs have not shown they are 'likely' to be arrested or detained." Gov. Opp. at 15. This is cold comfort since the Government has detained other students. Compl. ¶ 81. Four of the five Plaintiffs received consulate emails threatening deportation—even to a third country. In other cases, the Government has claimed that visa revocations were simply "prudential" and thus not a basis for deportation.

*E.g.*, **Ex. H** at 16:17-17:2. The government has made no such representations on the record here.

Furthermore, the Court should require Defendants to inform DOS that the names were provided in error and request that the visa revocations be reversed.[10] Defendants initiated the visa revocations by sharing names with DOS that resulted in revocations, notwithstanding Section 1201(i)'s clear dictate that only DOS has discretion to revoke visas. But they have refused to use that same channel to unwind their unlawful actions. "The fact that Defendants seem uninterested in even suggesting that [DOS] reconsider its decision . . . raises concerns that they plan to rely on that revocation to re-terminate [Plaintiffs'] SEVIS records." *Doe*, 2025 WL 1399216, at *13 (W.D. Va.). An injunction is necessary to compel DHS to attempt to remedy the harm to Plaintiffs of potential detention and deportation, and restore their ability to leave the country and lawfully return. *See Pavek v. Simon*, 467 F. Supp. 3d 718, 763 (D. Minn. 2020) (The "purpose of preliminary injunctive relief is to preserve the status quo."); *id.* (The Court should "mould each decree to the necessities of the particular case." (citation omitted)).

Plaintiffs "cannot get back the time they lost on their work and their education because of the SEVIS termination, which impacts their work and studies going forward." *Doe*, 2025 WL 1467543, at *8 (N.D. Cal.). Nor can they ignore the "anxiety and fear, as

---

[10] That DOS is a non-party is no barrier to the Court ordering *Defendants* to use the same channel through which they revoked Plaintiffs' visas to facilitate their restoration. *See Doe*, 2025 WL 1399216, at *13 (W.D. Va.) ("The court presumes that DHS can also inform [DOS] when those records did not in fact provide lawful grounds for terminating F-1 status.")

well as the disruption that detention and deportation pose to [Plaintiffs'] personal, academic, and professional pursuits." *Doe #1*, 2025 WL 1348503, at *13 (D.N.J.) (citation omitted). The continuation of that situation constitutes irreparable harm, which only a preliminary injunction can address.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for injunctive relief.

Dated:  June 2, 2025          *s/Kshithij Shrinath*

**ROBICHAUD, SCHROEPFER & CORREIA, P.A.**

Evangeline Dhawan-Maloney, Reg. No. 0401317
7500 Olson Memoral Highway, Suite 325
Golden Valley, MN  55427
evangeline@robichaudlaw.com
(612) 712-2843

**GREENE ESPEL PLLP**

Kshithij Shrinath, Reg. No. 0505164
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
kshrinath@greeneespel.com
(612) 373-0830

*Attorneys for Plaintiffs*