**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| SALMA RAMEEZ SHAIK, AKHIL POTHURAJU, NITHISH BABU CHALLA, SHYAM VARDHAN REDDY YARKAREDDY, and ALMAS ABDUL, | Civil No. 25-1584 (JRT/DJF) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; and PETER BERG, *in his official capacity as Field Office Director of Minneapolis-St. Paul, Minnesota Immigration and Customs Enforcement*, | |
| Defendants. | |

---

Evangeline Surya Ester Dhawan-Maloney, **ROBICHAUD, SCHROEPFER & CORREIA, PA**, 1601 Hennepin Avenue North, Suite 200, Minneapolis, MN 55403; Kshithij Shrinath and Alison Zoschak, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Plaintiffs.

Lucas B. Draisey, **UNITED STATES DEPARTMENT OF JUSTICE**, 300 South Fourth Street, Minneapolis, MN 55415, for Defendants.

Plaintiffs are international students who found themselves in a lurch in April: the United States had suddenly terminated the records that verified their legal status as students. Their university quickly informed the students that they should cease working

and consider leaving the country immediately. Plaintiffs filed this action, arguing the terminations were unlawful under the Fifth Amendment and the Administrative Procedures Act ("APA"). To preserve Plaintiffs' immigration status pending a resolution on the merits, the Court issued a temporary restraining order ("TRO") enjoining Defendants from taking adverse immigration actions against Plaintiffs. The parties consented to extending the TRO until the Court could consider the merits of a preliminary injunction. After considering more thoroughly the merits of the parties' arguments, the Court will now modify the terms of the TRO slightly and issue a preliminary injunction to preserve Plaintiffs' ability to work and study in this country without fear.

**BACKGROUND**

### I.    STATUTORY BACKGROUND

The Immigration and Nationality Act ("INA") allows a "bona fide student qualified to pursue a full course of study" to enter the country with an F-1 visa as a nonimmigrant alien. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Such noncitizens are referred to as having "F-1 status" once they enter the country on a valid visa. 8 C.F.R. § 214.1(a)(2). Once students gain F-1 status, they are permitted to remain in the United States for their "duration of status" even if their F-1 visas expire. *Id.* § 214.2(f)(5), (7); *see also Du v. U.S. Dep't of Homeland Sec.*, No. 3:25-644, 2025 WL 1549098, at *2 (D. Conn. May 31, 2025).

Duration of status covers "the time during which an F-1 student is pursuing a full course of study" at a certified educational institution or "engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). "[A]uthorized practical

training" refers to either curricular practical training ("CPT") or optional practical training ("OPT").  *Id.* § 214.2(f)(10).  OPT typically occurs after graduation and allows a student to be employed in a field "directly related to the student's major area of study" within 14 months of graduation, and an additional 24 months if the degree is in a science, technology, engineering, or mathematics field.  *Id.* § 214.2(f)(10)(ii).

To catalogue students with F-1 status, the Department of Homeland Security ("DHS"), through the Student and Exchange Visitor Program ("SEVP"), administers the Student and Exchange Visitor Information System ("SEVIS").  *See* ICE, *Student and Exchange Visitor Information System*, available at https://www.ice.gov/sevis/overview (last visited July 21, 2025).

A student may lose F-1 status only if they fail to "maintain status" or if DHS initiates a "termination of status."  Failure to maintain status includes failing to make "normal progress toward completing a course of study," 8 C.F.R. § 214.2(f)(5)(i), engaging in unauthorized employment, *id.* § 214.1(e), a "willful failure to provide full and truthful information requested by DHS," *id.* § 214.1(f), or conviction on "a crime of violence for which a sentence of more than one year imprisonment may be imposed," *id.* § 214.1(g). DHS may terminate F-1 status

> [w]ithin the period of initial admission or extension of stay . . . by the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on

the basis of national security, diplomatic, or public safety reasons.

*Id.* § 214.1(d).

## II.    FACTS

Plaintiffs, citizens of India, recently earned master's degrees from Concordia University in Saint Paul, Minnesota, and began their OPT by working in fields related to their course of study.  (Compl. ¶¶ 1, 10–14, Apr. 21, 2025, Docket No. 1.)  In April 2025, all five plaintiffs learned from Concordia that, without warning, Defendants at DHS and ICE suddenly terminated their F-1 student status in SEVIS.[1]  (*Id.* ¶ 2.)  Concordia instructed Plaintiffs to stop working immediately and to consider leaving the country.  (*Id.*)

At least four of the Plaintiffs committed minor traffic violations while in the United States.  (*See* Compl. ¶¶ 10, 12–14.)  However, none of the Plaintiffs were informed why their F-1 status was terminated.  (*Id.* ¶¶ 2, 4, 10–14.)  All plaintiffs were forced to stop working, creating considerable distress about their future in this country.  (*Id.* ¶ 6.)

## III.    PROCEDURAL HISTORY

Plaintiffs filed this Complaint on April 21, 2025.  (*See generally* Compl.)  They moved for a TRO and preliminary injunction that would order Defendants to set aside their termination decisions temporarily, to reinstate their status in SEVIS, and to refrain

---

[1] Defendants dispute this characterization.  (*See* Decl. of Lucas B. Draisey ("Draisey Decl.") ¶ 5, Ex. C ¶ 7, May 19, 2025, Docket No. 26 ("USCIS does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status.  Additionally, USCIS does not equate SEVIS record termination with adjudication of an immigration benefit.").)

from taking any further action to terminate their status or otherwise impose any legal consequences from the termination of status. (Ex Parte Mot. for TRO, Apr. 21, 2025, Docket No. 3.)

The Court granted the TRO as requested and ordered briefing on the preliminary injunction request. *Rameez Shaik v. Noem*, No. 25-1584, 2025 WL 1170447, at *3 (D. Minn. Apr. 22, 2025). Defendants consented to the extension of the TRO until the Court ruled on the preliminary injunction motion. (Order Extending TRO, May 2, 2025, Docket No. 20.)

Defendants have since reactivated Plaintiffs' SEVIS records. (Decl. of Lucas B. Draisey ("Draisey Decl.") ¶ 3, Ex. A ¶ 5, May 19, 2025, Docket No. 26.) Defendants also assert that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS based solely on the NCIC record that led to its initial termination." (*Id.* ¶ 6.)

## IV.    NATIONAL STUDENT VISA LITIGATION

While this TRO was pending, district courts around the country issued a cascade of similar TROs blocking DHS from arbitrarily terminating student statuses.[2] At least one district court went further, issuing a nationwide preliminary injunction that applied to the

---

[2] For only a small sample, *see, e.g.*, *Madan B. K. v. Noem*, No. 1:25-419, 2025 WL 1171572, at *9 (W.D. Mich. Apr. 23, 2025); *Alduaij v. Noem*, No. 2:25-538, 2025 WL 1180743, at *3–4 (W.D. Pa. Apr. 23, 2025); *W. B. v. Noem*, No. 25-3407, 2025 WL 1180296, at *6 (N.D. Cal. Apr. 23, 2025); *Du v. U.S. Dep't of Homeland Sec.*, No. 3:25-644, 2025 WL 1220254, at *6 (D. Conn. Apr. 28, 2025).

Plaintiffs here,[3] enjoining DHS from (1) arresting and incarcerating similarly situated plaintiffs, (2) transferring any of them outside their jurisdiction of residence, (3) imposing any adverse legal effect on them that would have been caused by the termination of their SEVIS records, or (4) reversing the SEVIS terminations. *Doe v. Trump*, No. 25-3140, 2025 WL 1467543, at *12 (N.D. Cal. May 22, 2025).

Other similar cases have brought to light the origins of the mass SEVIS record terminations. (*See* Pls.' Ex. List, Ex. G ("*Patel* Hr'g Tr."),[4] June 2, 2025, Docket No. 28.) In March 2025, 10 to 20 federal employees or contractors spent over two weeks manually entering the names of 1.3 million students into the National Crime Information Center ("NCIC") database to see if any had criminal records. (*Patel* Hr'g Tr. 8:23–9:24.) Over 16,000 names came up with a match in the database. (*Id.* 11:15–20.) Validation efforts whittled that number down to 6,400. (*Id.* 12:13–17, 13:19–14:3.) DHS then sent those 6,400 names to the Department of State ("DOS"). (*Id.* 12:18–14:4.) DOS returned those names to DHS in two batches: students with expired visas and students who still had valid visas. (*Id.* 14:10–15:21, 16:6.) For the roughly 3,000 students with valid visas, DOS

_____

[3] As of now, it is unclear what impact the Supreme Court's curtailing of nationwide injunctions will have on this case. *Trump v. CASA, Inc.*, No. 24-A884, 2025 WL 1773631, at *6 (U.S. June 27, 2025) (holding Congress has not granted district courts wide latitude in issuing universal injunctions). Regardless, this Court's order is decided and issued independently of the preliminary injunction issued in *Doe v. Trump* and applies only to the named plaintiffs in this case.

[4] Taken from *Patel v. Lyons*, No. 25-1096 (D.D.C. Apr. 29, 2025).

revoked their visas. (*Id.* 15:13–16:1.) For the rest, those with expired visas, DOS directed DHS to terminate their SEVIS records. (*Id.* 23:4–12.)

Then, in apparent response to frequent losses in federal court, DOS, DHS, and ICE reversed course. In fact, ICE restored all student records in SEVIS that had been terminated under the previous policy.[5] ICE then promulgated a new policy for termination of records in SEVIS. (*See* Pls.' Ex. List, Ex. I ("Policy"), June 2, 2025, Docket No. 28.) That Policy states that "SEVP can terminate records for a variety of reasons, including, but not limited to" ten different reasons, including "U.S. Department of State Visa Revocation (Effective Immediately)."[6] (Policy at 3.) The Policy also states that DOS "may at any time, in its discretion, revoke an alien's visa," and when DOS "revokes an alien's visa with immediate effect, ICE should take steps to initiate removal proceedings." (*Id.* at 4.) The Policy notice disclaims that it is not "itself a rule or a final action by SEVP." (*Id.*)

---

[5] *See* Montague & Aleaziz, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, N.Y. Times (Apr. 25, 2025), https://www.nytimes.com/2025/04/25/us/politics/trump-student-visa-cancellations.html.

[6] Immediate visa revocation is different than a prudential visa revocation. Defendants admit here (and have admitted in various other cases around the country) that the students' visas were prudentially revoked and that prudential visa revocations are not grounds for removal. *See, e.g.*, *Vyas v. Noem*, No. 3:25-261, 2025 WL 1351537, at *5 (S.D. W. Va. May 8, 2025) (noting ICE has admitted that "a prudential revocation, absent other factors, does not have a corresponding ground of removability").

**DISCUSSION**

## I.    STANDARD OF REVIEW

The Court considers four factors for a preliminary injunction motion: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No one factor is determinative, and the court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted). The moving party bears the burden to establish that these factors weigh in favor of granting temporary relief. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## II.    JURISDICTION

Before determining whether Plaintiffs have met their burden for injunctive relief, the Court must determine if it has jurisdiction to grant the relief requested. Specifically, Defendants challenge the Court's power to enjoin defendants from detaining and deporting Plaintiffs or from revoking Plaintiffs' visas.

### A.    Detention & Removal

Whether the INA strips the Court of jurisdiction to enjoin Defendants from detaining or deporting Plaintiffs is central to deciding whether the Court has jurisdiction to enter part of the proposed preliminary injunction.

The INA states, in relevant part,

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV[7] of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  This provision in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) "substantially limited the availability of judicial review" for detention and removal orders.  *Nken v. Holder*, 556 U.S. 418, 424 (2009).

Three Supreme Court cases have interpreted this provision to generally prohibit injunctive relief on a classwide basis.  First, the Supreme Court held that this section "prohibits federal courts from granting classwide injunctive relief" but "does not extend to individual cases."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–482 (1999).  Second, the Supreme Court has suggested, at least in passing, that even for

---

[7] Part IV relates to the Inspection, Apprehension, Examination, Exclusion, and Removal of noncitizens.  *See* 8 U.S.C. §§ 1221–32.

individualized relief, the only exception may come only "so long as 'proceedings' against the alien have been 'initiated.'" *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Third, the Supreme Court has clarified that even if the statute strips the Court of the ability to issue a specific type of remedy—enjoining DHS's ability to enforce specific provisions of the INA—lower courts maintain subject matter jurisdiction over the underlying INA claims. *Biden v. Texas*, 597 U.S. 785, 798 (2022).

This is not a class action suit; Plaintiffs here seek individualized relief only for themselves. And as *Biden v. Texas* made clear, the Court has subject matter jurisdiction to hear this case more generally. So the only questions that remain are (1) whether Plaintiffs' requested relief would "enjoin or restrain the operation of the provisions of part IV of this subchapter," and (2) if so, whether individual "proceedings" have been "initiated." 8 U.S.C. § 1252(f)(1).

### 1. "Enjoining" or "Restraining" Covered INA Provisions

Defendants claim that 8 U.S.C. § 1227(a)(1)(B), (C)(i), which provide that any alien whose visa has been revoked and any nonimmigrant who fails to maintain nonimmigrant status are deportable, allow initiation of removal proceedings against a student with F-1 status. Defendants then argue that because Part IV of the INA governs the inspection, apprehension, examination, exclusion, and removal of noncitizens, 8 U.S.C. § 1221–32, any injunction on Defendants power under 8 U.S.C. § 1227(a)(1)(B), (C)(i) would enjoin Part IV of the INA. Accordingly, Defendants argue that the Court lacks jurisdiction to enter that requested relief.

-10-

The various SEVIS cases around the country have not opined on the applicability of § 1252(f)(1) specifically,[8] but, in other contexts, courts have recognized a so-called "collateral" exception to the general jurisdictional bar found in § 1252(f)(1). *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, No. 22-55988, 2024 WL 5692756, at *16 (9th Cir. May 14, 2025) (finding that an injunction prohibiting the Government from applying the Asylum Transit rule to asylum applications was not barred by § 1252(f)(1) even though it had "collateral" effects on removability, but also finding that a request to bar the United States to direct immigration officers to reopen asylum determinations would run afoul of § 1252(f)(1) because it "require[s] officials to take actions that (in the Government's view) are not required by" the covered removal provisions). In other words, if the injunction the Court enters is merely "collateral" to the United States' ability to detain and remove the noncitizens, then § 1252(f)(1) does not strip the Court of jurisdiction.

Here, because the Court may limit its injunction to only enjoin DHS from detaining or removing F-1 status students solely because of the improper SEVIS terminations, that prohibition would be collateral to Part IV of the INA. That injunction would not enjoin or

---

[8] Plaintiffs claim that "Courts have soundly rejected" the argument that § 1252(f)(1) bars the Court's jurisdiction here. But that is not true. The SEVIS cases they cite deal with § 1252(g), a different provision that states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

restrain any provision of the INA whole cloth; it would merely disrupt a ripple effect that would otherwise flow from Defendants' conduct as applied to these specific Plaintiffs.

The Court thus has jurisdiction to enter a limited injunction that would prevent Defendants from detaining or removing Plaintiffs because of their unlawful SEVIS record terminations.

### 2.    "Initiating Proceedings" Against Plaintiffs

The Court has such jurisdiction for a different, independent reason: even if the requested relief does "enjoin or restrain the operation of" the INA's detention and removal proceedings, the Court can still issue the injunction if "proceedings" have been "initiated" against the Plaintiffs.

As a preliminary matter, the Court disagrees with Defendants' rigid reading of this requirement. Defendants' reading comes from dicta in *Aleman Gonzalez*. In that case, Justice Alito wrote,

> § 1252(f)(1) does not preclude a court from entering injunctive relief on behalf of a particular alien **(so long as "proceedings" against the alien have been "initiated")**, but injunctive relief on behalf of an entire class of aliens is not allowed because it is not limited to remedying the unlawful "application" of the relevant statutes to "an individual alien."

*Aleman Gonzalez*, 596 U.S. at 550–511 (emphasis added).

But *Aleman Gonzalez* involved a class action, not injunctive relief for individual aliens. *See id.* at 551 ("[T]he injunctions do not fall within the exception for individualized relief because the injunctions were entered on behalf of entire classes of aliens.").

Therefore, the Court had no opportunity to evaluate how the language may confine a court's jurisdiction when plaintiffs seek individualized relief.

And most courts have interpreted § 1252(f)(1) to prohibit classwide relief without disturbing the ability, in general, to offer injunctive relief to individual plaintiffs. *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676, 2025 WL 1142968, at *12 (D. Mass. Apr. 18, 2025) ("Section 1252(f)(1) generally prohibits lower courts from ordering federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out 'the specified statutory provisions,' other than on a case-by-case basis." (citing *Aleman Gonzalez*, 596 U.S. at 549–50)); *Al Otro Lado*, 2024 WL 5692756, at *15 (noting § 1252(f)(1) prohibits injunctive relief "with respect to an entire class"). Even the Supreme Court has described § 1252(f)(1) as clarifying that the ban on injunctive relief "does not extend to individual cases." *Reno*, 525 U.S. at 481–82.

The Court reads the statute and the relevant binding Supreme Court precedent to mean that § 1252(f)(1) bars only classwide injunctive relief for covered INA provisions. If that is the case, the Court clearly has jurisdiction here to enjoin Defendants from detaining or removing these individual Plaintiffs.

But even if the Court were to adopt the more restrictive reading of the statute— that the individualized relief exception only applies to those against whom "proceedings" have been "initiated," Plaintiffs here may still fall within that exception. Here, proceedings have been initiated at least in some fashion because DOS revoked their visas,

DHS terminated their SEVIS records, and students were informed that they had to stop work and should consider leaving the country altogether.

Either way, Plaintiffs are individuals against whom proceedings have been initiated, so the Court is not barred from providing them with injunctive relief.

\*    \*    \*

Overall, either because the Court is not enjoining or restraining a relevant part of the INA or because Plaintiffs are proceeding as individuals, the Court is on solid footing entering an injunction against Defendants' ability to detain or remove Plaintiffs based on their SEVIS terminations.

### B.    Visa Revocations

Separately, Defendants contest the Court's jurisdiction to enjoin Defendants from "revoking Plaintiffs' visas or referring Plaintiffs' names to any other government agency for visa revocation" and requiring "DHS to inform DOS that Plaintiffs' names were provided in error and to request that DOS reverse the visa revocations that were premised on set-aside termination of SEVIS records." (Pls.' Reply Mem. Supp. Mot. Prelim. Inj. at 8, June 2, 2025, Docket No. 27.) Defendants rely on Congress's delegation to the Secretary of State to revoke visas and the Court's inability to review those revocations:

> After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation. . . . There shall be no means of judicial review . . . of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.

-14-

8 U.S.C. § 1201(i).  Defendants further challenge the Court's jurisdiction because the issuing authority, DOS, is not a party to this case.

Most courts handling SEVIS cases have not gone so far as to explicitly bar the United States from revoking the plaintiff's visa in the future, instead opting for a vaguer injunction prohibiting adverse immigration actions resulting from the SEVIS termination. *See, e.g.*, *Saxena v. Noem*, No. 5:25-5035, 2025 WL 1413266, at *9 (D.S.D. May 15, 2025) (enjoining defendants "from taking any enforcement action against [the plaintiff] arising directly or indirectly from the April 2025 termination of her SEVIS record or visa").  The nationwide injunction that is (arguably) in place does the same.  *See Doe v. Trump*, 2025 WL 1467543, at *12 (barring defendants "from imposing any adverse legal effect [on plaintiffs] that otherwise may be caused by the termination of their SEVIS record").

The Court agrees that an explicit injunction barring Defendants from revoking a visa—and especially one requesting reinstatement of a visa—would likely be inappropriate due to Congress's express deference to the Secretary of State for visa revocations.  The Court will therefore narrow any injunction to focus on the harms flowing directly from the SEVIS terminations in this case.

III.    **MERITS OF PRELIMINARY INJUNCTION**

Having determined that the Court has jurisdiction to offer the majority of the relief requested, the Court must now weigh the *Dataphase* factors to determine whether a

preliminary injunction is necessary and appropriate.  Defendants primarily contest the Plaintiffs' showing of irreparable harm after Defendants restored Plaintiffs' SEVIS status.

### A.  Irreparable Harm

The Court must first determine if Defendants reinstatement of Plaintiffs' SEVIS records and promise to refrain from any further termination under specific circumstances moots any prior irreparable harm.

First, ICE has clearly left the door open for another round of SEVIS terminations.  In an affidavit, ICE chose its words very carefully: "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination."  The gaping hole in that statement is obvious.  *Doe v. Noem*, No. 2:25-633, 2025 WL 1397007, at *5 (W.D. Wash. May 14, 2025) (noting the wording of ICE's identical promise "is hardly ironclad").  Indeed, the Policy explicitly asserts (with no citation to law) that ICE has the right to terminate a student's SEVIS record for, among other things, a failure to comply with nonimmigrant status or a visa revocation.  The Policy also clarifies that DOS may revoke such visas "at any time, in its discretion."  These statements do not instill confidence that ICE will abide by its word not to repeat this same charade under slightly different verbiage.  *See also Prowse v. Payne*, 984 F.3d 700, 702

(8th Cir. 2021) ("[A] defendant cannot always moot a case simply by voluntarily ceasing its unlawful conduct after the plaintiff files suit.").[9]

Second, even accepting Defendants' distinction between SEVIS termination and termination of F-1 status, the SEVIS termination alone serves as irreparable harm. When ICE terminated their SEVIS records, Concordia immediately notified them of that termination, told them to cease working, and even suggested they consider immediately leaving the country. Those are harrowing life disruptions that would make it impossible for any student to focus on learning or working and contributing to life here in the United States. Those disruptions surely constitute irreparable harm.

Third, DOS instructed ICE to immediately initiate removal proceedings upon visa revocation. (*See* Policy (noting that when a visa revocation happens, "ICE should take steps to initiate removal proceedings").) Accordingly, the Plaintiffs face the potential of immediate immigration consequences if their SEVIS records are terminated again.

Given the uncertainty of ICE's future actions, the threat of irreparable harm remains potent, and this factor weighs heavily in Plaintiffs' favor.

---

[9] *But see, e.g.*, *Badam v. Lyons*, No. 1:25-1098, 2025 WL 1302026, at *2 (D.D.C. May 5, 2025) ("[T]he mere possibility that the government could again terminate plaintiffs' SEVIS records in the future is too speculative to warrant preliminary injunctive relief today."); *Doe v. Noem*, No. 2:25-633, 2025 WL 1397007, *4–5 (W.D. Wash. May 14, 2025) (finding "no present irreparable injury to support a preliminary injunction").

**B.    Balance of Equities**

Next, the Court must weigh the irreparable harm Plaintiffs face against the injury that granting the injunction will inflict on Defendants.

Nothing has changed in this balance since the Court issued the TRO, nor do Defendants even attempt to argue this factor would weigh in their favor.  In the absence of a preliminary injunction, Plaintiffs could face possibly irreversible immigration consequences and at the very least severe disruptions to their lives in the United States. Any injury Defendants may suffer is negligible compared to those consequences.  *See Madan B. K. v. Noem*, No. 1:25-419, 2025 WL 1171572, at *8 (W.D. Mich. Apr. 23, 2025) ("Granting emergency relief will merely maintain the status quo that has been in place for the several years that Plaintiffs have been in the United States as F-1 students and employees.").

This factor continues to weigh in favor of issuing the preliminary injunction.

**C.    Likelihood of Success on the Merits**

The Court next must assess whether Plaintiffs have a likelihood of success on their APA or Fifth Amendment claims.

DHS's ability to terminate an F-1 student status is not fully discretionary; it is limited by regulation.  *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).  Even after additional briefing, Defendants cannot identify a single part of the regulations that justifies their termination of Plaintiffs' F-1 status.  That alleged failure to follow its own regulations is enough at least to show a likelihood to succeed on

Plaintiffs' APA claim. *See Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988) (noting that "the Agency's failure to follow its *own regulations* can be challenged under the APA"). Indeed, Defendants' abrupt reversal in reinstating the SEVIS records and failure to even defend their original terminations betrays their own assessment of the legality of their actions.

Instead of defending their actions, Defendants maintain they terminated not these Plaintiffs' F-1 status but rather their SEVIS record. But the practical consequences are the same: Plaintiffs' university notified them that their SEVIS records had been terminated and that as a result Plaintiffs must cease their employment. Indeed, almost all courts to have considered this argument have rejected it. *See Doe v. Trump*, 2025 WL 1467543, at *5–7 (collecting cases) ("By terminating Plaintiffs' SEVIS records, Defendants altered Plaintiffs' legal status within the United States."). Defendants' distinction does not decrease Plaintiffs' likelihood of success.

Plaintiffs have demonstrated a high likelihood of success on the merits of at least their APA claim. Regulations set out a specific set of circumstances under which ICE may terminate a student's F-1 status. To date, ICE has yet to provide a clear answer as to why it terminated Plaintiffs' SEVIS records. Because Plaintiffs have shown a likelihood of success, this factor weighs in favor of issuing a preliminary injunction.

### D.    Public Interest

The final factor the Court must consider is whether issuing a preliminary injunction is in the public interest. In evaluating the appropriateness of the TRO, the Court found there was "substantial public interest in a federal agency following its own regulations, in

students feeling secure in the promises made to them by the federal government, and in Americans trusting their own government to follow the rule of law." *Rameez Shaik*, 2025 WL 1170447, at *3.

Nothing has meaningfully changed since the Court issued its TRO. As a new school year approaches, students from around the world will travel to the United States to begin or continue their studies at the world's premier educational institutions. It serves the public interest to provide such students with the assurance that when they enter the United States with F-1 status, the United States government will abide by the laws and regulations that protect their right to be here. *See also Alduaij v. Noem*, No. 2:25-538, 2025 WL 1180743, at *3 (W.D. Pa. Apr. 23, 2025) ("Enforcement of federal immigration law—including provisions that constrain agency action, as well as empower it—is in the public interest.").

This factor continues to weigh in favor of issuing a preliminary injunction.

\*　　\*　　\*

Overall, all four *Dataphase* factors weigh heavily in favor of a preliminary injunction. But the Court will narrow the terms of the TRO in issuing the preliminary injunction to ensure that injunction does not exceed the Court's jurisdiction.

## IV.    BOND

A Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Defendants have not requested bond.  As it did in its TRO, the Court will exercise its discretion not to require bond in this case.

## CONCLUSION

Plaintiffs in this case, like generations before them, came to this country in pursuit of the American Dream.  Imagine their surprise when the United States government suddenly turned that dream into a nightmare—based on nothing more than a haphazard database match.  That conduct was likely contrary to law.

Though the Court's TRO provided Plaintiffs with temporary relief, Plaintiffs' risk of irreparable harm is ongoing.  With time to more fully consider the merits of Plaintiffs' case, the Court now dissolves its TRO and enters a slightly modified preliminary injunction: barring Defendants from taking adverse immigration actions based on the likely illegal SEVIS termination records and requiring notice if they choose to terminate these records again.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court's Temporary Restraining Order [Docket No. 19] is **DISSOLVED**.

2. Plaintiffs' Motion for a Preliminary Injunction [Docket No. 3] is **GRANTED** as follows:

    a. To the extent they have not already done so, Defendants are **ORDERED** to set aside the previous termination of Plaintiffs' SEVIS records, retroactive to the date of termination.

    b. Defendants are **ENJOINED** from terminating SEVIS records again in the future for any reasons not authorized by law, including but not limited to immediate visa revocations, NCIC checks, criminal history that does not qualify under 8 C.F.R. § 214.1(g), and any other actions not specified in 8 C.F.R. § 214.2(d)–(g).

    c. Defendants are **ENJOINED** from terminating Plaintiffs' SEVIS records in the future without first providing one week's notice to Plaintiffs and the Court, as well as providing Plaintiffs' an opportunity to be heard prior to those terminations.

    d. Defendants are **ENJOINED** from imposing any adverse legal effect on Plaintiffs that otherwise may be caused by the termination of their SEVIS record.

    e. Defendants are **ENJOINED** from arresting and incarcerating any of the Plaintiffs pending resolution of this action.

3. The Court exercises its discretion to waive the requirement in Federal Rule of Civil Procedure 65(c) for Plaintiffs to provide security.

4.  This Order is effective upon the date recited below and shall remain in effect

    until this action is terminated, or until otherwise ordered by the Court.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  August 11, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge